UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TANEISHA R. o/b/o N.D.P.,

                Plaintiff,           **DECISION AND ORDER**

      v.

                              1:23-CV-00098 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Taneisha R. ("Plaintiff") brings this action on behalf of N.D.P., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for children's supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

On September 29, 2020, Plaintiff protectively filed an application for SSI on behalf of N.D.P., a child under the age of 18. (Dkt. 5 at 19, 194-203).[1]  Plaintiff alleged N.D.P.'s disability began on September 4, 2019, due to learning disabilities, difficulties with concentration and focus, and hyperactivity. (*Id.* at 19, 195). Plaintiff's application was initially denied on December 22, 2020. (*Id.* at 19, 89-104). On December 22, 2021, Plaintiff and N.D.P. appeared at a telephonic hearing before administrative law judge ("ALJ") Mark Solomon. (*Id.* at 19, 31-60). On January 19, 2022, the ALJ issued an unfavorable decision. (*Id.* at 19-26). Plaintiff requested Appeals Council review, and her request was denied on December 8, 2022, making the ALJ's decision the Commissioner's final determination. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     <u>Disability Determination</u>

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009).  "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.'  Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in

an appendix to the regulations." *Id*. (quoting 20 C.F.R. § 416.924, internal citations omitted).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations and citations omitted).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether N.D.P. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that N.D.P. was born on March 11, 2010, and therefore was a school-age child on September 29, 2020, the date the application was filed, and on the date of the written determination. (Dkt. 5 at 20). At step one, the ALJ determined that N.D.P. had not engaged in substantial gainful activity since September 29, 2020, the application date. (*Id*.).

At step two, the ALJ found that N.D.P. suffered from the severe impairment of attention-deficit hyperactivity disorder (ADHD).  (*Id*.).  The ALJ further found that N.D.P.'s asthma was a non-severe impairment.  (*Id*.).

At step three, the ALJ found that N.D.P. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.).  Similarly, the ALJ found that N.D.P. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings.  (*Id*. at 21).  In making this determination, the ALJ considered N.D.P.'s functioning in each of the above-mentioned six domains and concluded that N.D.P. had no limitation in acquiring and using information, moving about and manipulating objects, and health and physical well-being.  (*Id*.).  He determined that N.D.P. had less than a marked limitation in attending and completing tasks, and caring for herself, and a marked limitation in interacting and relating with others. (*Id*.).  Accordingly, the ALJ found that N.D.P. was not disabled as defined in the Act.  (*Id*. at 25).

## II.  <u>The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error</u>

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that he erred in his assessment of the domains of attending and completing tasks and caring for oneself.  (Dkt. 6-1 at 1, 17).  Plaintiff generally contends that the ALJ should have found that N.D.P. had marked limitations in each of these domains and that his conclusion that she had "less than marked" limitations in both domains was not supported by substantial evidence.

"An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the

decision." *Dana F. o/b/o O.E.H. v. Berryhill*, No 6:18-CV-1337 (ATB), 2019 WL 7067060, at *3 (N.D.N.Y. Dec. 23, 2019). Further, while "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record . . . the ALJ cannot 'pick and choose' evidence in the record that supports his conclusions." *Id*. (internal quotations and citation omitted). In the context of child disability proceedings, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence, and employ a 'whole child' approach." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.,* No. 5:18-cv-0634(TWD), 2019 WL 4573262, at *4 (N.D.N.Y. Sept. 20, 2019) (internal quotations and citation omitted). This approach "requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id*.

As an initial matter, Plaintiff's argument—that the evidence supports marked limitations in the domains of attending and completing tasks and caring for herself—is based largely on her disagreement with how the ALJ weighed the evidence. In other words, Plaintiff's contention is that the ALJ failed to sufficiently credit certain items of evidence in the record which she contends support a finding of marked limitations.

Plaintiff's arguments do not require remand. It is not the function of this Court to re-weigh evidence or consider *de novo* whether N.D.P. is disabled. *See Urena v. Comm'r of Soc. Sec*., 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine *de novo* whether [a claimant] is disabled." (alteration in

original) (internal quotation and citation omitted)).  Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.").

The Court has reviewed the ALJ's written determination, as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence.  While the record supports that N.D.P. has some limitations in functioning, the ALJ adequately explained how he arrived at his determination that N.D.P. has less than marked limitations in the domains of attending and completing tasks and caring for herself.

As explained in the written determination, to support his conclusions, the ALJ relied on the November 30, 2021, Teacher Questionnaire completed by N.D.P.'s classroom teacher, Ms. Zolatz and math teacher, Ms. Brown, which the ALJ found persuasive.  (Dkt. 5 at 25).  Specifically, the ALJ explained his assessment of the teachers' submissions as follows:

> Ms. Brown identified no obvious problems in acquiring and using information, no serious problems in domains two, three and five, and no problems in domain four.  Ms. Zoladz indicated she knew [N.D.P.] for three months and taught [N.D.P.] science, writing and advisement.  Her ratings were no problems in domains one and four, and no to serious problems in the remaining domains. (Ex. B12F).  Ultimately, neither teacher found any very serious problems.  There were a few serious problems and some obvious problems.  These opinions are persuasive based on observation and generally supports less than marked limitations.  The record documents [N.D.P.] doing well in school despite absences and tardiness.  Although Ms. Zoladz and Ms.

Brown noted only serious problems in a couple o[f] areas, recent disciplinary records do show some greater difficulties interacting in terms of behavior, which they may not have witnessed. I note [N.D.P.] was out of treatment for several months. The record does not support that the limitations stated have lasted twelve months since the protective filing date. Per Ex. B10F, [N.D.P.] was discharged in April 2021, having missed sessions including medication management sessions, and was assessed with low level of violent aggression. There is no evidence that [N.D.P.'s] condition would not be improved with counseling and medication, or that such condition has lasted or would be expected to last twelve months. In any event, this is the only domain in which there is a currently a marked limitation.

(*Id.*).

The ALJ also considered the assessments of the state-agency consultants who found N.D.P.'s ADHD to be severe and concluded that she had less than marked limitations in attending and completing tasks and no limits in the other domains. (*Id.* at 61-71, 72-82). In finding the opinions persuasive, the ALJ stated:

These opinions are substantially persuasive based upon the records available to the consultants at the time of their review. Given the later submitted evidence, I am finding marked limits in [N.D.P.'s] ability to interact with others as the record shows ongoing disruptive, argumentative, and occasional violent behavior with peers and authorities, and multiple mental status examinations noting disengagement, easy distractibility and poor or intermittent eye contact with her counselor. . . . Additionally, I find [N.D.P.] displays less than marked limits in the ability to care for herself given that she is a school-age child who is dependent upon her mother for necessities, and the teacher questionnaires, report cards and disciplinary records support

greater limitations in this domain than the consultants opined. (Exs. B11F-B13F).

(*Id.* at 25).

In her motion, Plaintiff challenges the ALJ's determinations in the domains of attending and completing tasks and caring for herself.  The Court finds no error.

## A. Attending and Completing Tasks

For the domain of attending and completing tasks, the ALJ must assess the claimant's ability to focus and maintain attention and begin, carry through, and finish activities, including not only consideration of the pace that the activities are performed, but also the claimant's ease of switching between activities.  20 C.F.R. § 416.926a(h); *see also Martonique A. obo M.Q. v. Comm'r of Soc. Sec.*, No. 1:21-CV-849-DB, 2023 WL 5723068, at *5 (W.D.N.Y. Sept. 5, 2023) ("The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well he can begin, carry through, and finish activities, including the pace at which the child performs activities and the ease with which she can change them.").  For a school-age child between the age of 6 and 12, the regulations provide:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments).  You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate.  You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores.  You should also be able to complete a transition task (*e.g.*, be ready

for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. at § 416.926a(h)(2)(iv).

The ALJ concluded that N.D.P. had a less than marked limitation in this domain. In making that determination, the evidence he relied upon included the statement from Ms. Zoladz that N.D.P. could work well when she was focused but that she was "easily distracted and very disruptive in class at times." (Dkt. 5 at 682). Similarly, Ms. Brown noted that N.D.P. needed prompting to attend to multistep assignments and is "very impulsive and quick to chat, shout out or socialize." (*Id.* at 677). Neither Ms. Zoladz or Ms. Brown marked a box indicating that any of the thirteen examples of this domain constituted a "very serious problem," but Ms. Brown identified "a serious problem" with N.D.P.'s ability to refocus to task when necessary and working without distracting self or others. (*Id.* at 677). Ms. Zoladz opined that N.D.P. had "a serious problem" with changing from one activity to another, organizing her own things or school materials, completing assignments, and working without distracting self or others.

To the extent that Plaintiff argues that the assessments of Ms. Brown and Ms. Zoladz reflecting that N.D.P. has "a serious problem" in certain areas in this domain is inconsistent with a "less than marked" determination by the ALJ, this contention is without merit. Indeed, the caselaw in this area does not support the position Plaintiff advances. *Lisa T. o/b/o T.M. v. Kijakazi*, No. 21-CV-6052L, 2023 WL 24048, at *2 (W.D.N.Y. Jan. 3, 2023) ("Although teacher questionnaires are unquestionably probative of a child's limitations, courts have consistently rejected the argument that a teacher's opinion that a child has 'serious' or 'very serious' limitations in one or more areas of a functional domain is the

equivalent of a 'marked' limitation in that domain, particularly where, as here, medical opinion evidence indicated no more than moderate limitations."); *Sally M. o/b/o C.B. v. Comm'r of Soc. Sec.*, No. 20-CV-6210-MJR, 2021 WL 1783007, at *3 (W.D.N.Y. May 5, 2021) ("At the outset, assessments of 'serious' and 'very serious' problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were 'less than marked.'"); *Nicole A. o/b/o J.D.J.W. v. Comm'r of Soc. Sec.*, No. 19-CV-1654L, 2021 WL 916016, at *4 n.2 (W.D.N.Y. Mar. 10, 2021) ("[P]laintiff's argument appears to be premised, at least in part, on her view that [the teacher's] opinion that [plaintiff] had 'serious' and 'very serious' problems in certain functional domains necessarily equates to a finding of 'marked' or 'extreme' limitations in those domains for purposes of the ALJ's functional equivalence analysis. . . .  Other than the wording of the relevant regulations, however, plaintiff cites no authority for this proposition, and other courts have rejected this same argument."); *White o/b/o T.R.W. v. Berryhill*, No. 17-CV-6367P, 2019 WL 1367382, at *5 (W.D.N.Y. Mar. 26, 2019) (holding that the fact that plaintiff's teachers assessed him having "serious" and "very serious" problems in a domain is "not necessarily inconsistent with the ALJ's conclusion that [plaintiff's] limitations were 'less than marked'").  The ALJ's determination here relied upon and was consistent with the opinions of Ms. Brown and Ms. Zoladz, as the ALJ's decision makes clear.

In addition, the ALJ also noted that treatment records from Child and Family Services Mental Health which reflect that N.D.P. was referred in December 2019 for poor focus and inability to follow directions and she was given the clinical diagnosis of ADHD. (Dkt. 5 at 23).  Records from July, August, and September of 2020 indicate N.D.P.'s

difficulty sustaining attention, sitting still, and controlling emotions.  But in November 2020, N.D.P. reported that medication was helping and she was doing better with virtual school.  A December 2020 treatment record indicates that N.D.P. reported that things were going "great" and she was doing better with school, but with some difficulty managing emotions and behaviors.  (*Id.* at 23).  The Court finds no error in the ALJ's consideration of the medical treatment records or his conclusion that some of N.D.P.'s issues were improved with or controlled by medication.

In sum, while Plaintiff argues that evidence in the record supported a marked limitation in this domain, "[t]he ALJ is permitted to resolve such evidentiary conflicts." *Cotton o/b/o J.T.C. v. Comm'r of Soc. Sec.*, No. 19-CV-6542-FPG, 2020 WL 5800820, at *4 (W.D.N.Y. Sept. 28, 2020); *see also Casey P. obo Q.F.A. v. Comm'r of Soc. Sec.*, No. 1:21-CV-831-DB, 2023 WL 6148035, at *9 (W.D.N.Y. Sept. 20, 2023) ("Even assuming, *arguendo*, that there was some conflict, it was the ALJ's sole responsibility to evaluate the medical evidence and resolve any material conflicts in the record, and in this case, after weighing all the evidence, the ALJ reasonably found Q.F.A. to have only a marked limitation in the domain of health and physical well-being.").  The ALJ is only required to build an accurate and logical bridge between the evidence and the decision to enable a court to engage in a meaningful review of his conclusions, which, contrary to Plaintiff's contentions, he has done here.

**B.    Caring for Herself**

In assessing the domain of caring for oneself, the ALJ must "consider how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child]

get[s] [his or her] physical and emotional wants and needs met in appropriate ways; how [the child] cope[s] with stress and changes in [his or her] environment; and whether [the child] take[s] care of [his or her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). This includes consideration of the child's ability to regulate him or herself and the ability to respond to changes in emotions as well as to the daily demands of his or her environment to take care of one's personal needs, health, and safety. *Jenia W. o/b/o L.J.R. v. Comm'r of Soc. Sec.*, No. 20-CV-01303, 2022 WL 507345, at *4 (W.D.N.Y. Feb. 18, 2022). "[T]his domain focuses on how well a child relates to herself by maintaining a healthy emotional and physical state in ways that are age-appropriate and in comparison to other same-age children who do not have impairments." *Maria E. o/b/o J.M.A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1337 (WBC), 2021 WL 3861422, at *3 (W.D.N.Y. Aug. 30, 2021).

In assessing this domain, the ALJ noted Plaintiff's testimony that N.D.P. has difficulty getting up in the morning and relies on Plaintiff to get to school. (Dkt. 5 at 24). He also credited information in the record documenting N.D.P.'s challenges with self-regulation. (*Id.*). In support of his determination, the ALJ relied upon the teacher questionnaires from Ms. Brown and Ms. Zoladz. Ms. Brown only indicated that N.D.P. has a serious problem with handling frustration properly, but assessed lesser ratings (i.e., no problem, a slight problem, or an obvious problem) for the nine other functional areas. (*Id.* at 680). Ms. Zoladz did not identify a serious problem or very serious problem for any of the ten activities identified. (*Id.* at 685). The ALJ also cited to multiple mental status

examinations that reflected impaired insight and judgment in concluding that the limitation was less than marked.  (*Id.* at 24).

Much like with the domain of attending and completing tasks, Plaintiff's challenges to the ALJ's determination amount to an invitation for the Court to re-weigh the evidence of record, which the Court may not do.  *Amanda F. o/b/o A.J.F. v. Comm'r of Soc. Sec.*, No. 21-CV-00509, 2023 WL 3686638, at *5 (W.D.N.Y. May 26, 2023) ("In sum, the ALJ considered all the evidence of record when assessing the limitations in the six functional domains of functioning.  Ultimately, plaintiff's argument merely emphasizes the existence of conflicting evidence in the record, but it was the responsibility of the ALJ to evaluate the conflicting evidence and reasonably determine the degree of limitation in the specific functional domains.").  While there may be evidence in the record supporting a conclusion that N.D.P. has greater limitations, including one treatment record reflecting Plaintiff's report that N.D.P. made previous threats of self-harm or documentation of her sleep difficulties, the ALJ is not required to discuss every piece of evidence and it is not this Court's function to re-weigh the evidence.  The ALJ's conclusion that N.D.P.'s limitations do not rise to the level of being marked is well-supported in the record.

In sum, the Court finds that the ALJ's determination is supported by substantial evidence.  Accordingly, remand is not required.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 18, 2024
       Rochester, New York

- 15 -